UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| INAG, INC., a Nevada Corporation, | Case No. 2:16-cv-00722-RFB-GWF |
| and | **<u>ORDER</u>**<br>on<br>Motion for a Preliminary Injunction<br>(ECF No. 30) |
| MARK H. JONES and SHERYLE L. JONES as Trustees of the Mark Hamilton Jones and Sheryle Lynn Jones Family Trust U/A/D/ November 7, 2013, | |
| Plaintiffs/Counterdefendants, | |
| v. | |
| RICHAR, INC., a Nevada Corporation | |
| Defendant/Counterclaimant. | |

## I.  INTRODUCTION

Before the Court is Defendant/Counterclaimant's Motion for a Preliminary Injunction (ECF No. 30). The Court has reviewed the parties' papers and heard oral argument. For the reasons stated on the record at the hearing on January 11, 2017, and elaborated below, the Court grants a preliminary injunction as described at the conclusion of this Order.

## II.  BACKGROUND

Plaintiffs INAG, Mark Jones and Sheryle Jones, filed a Complaint against Richar on March 31, 2016. ECF No. 1. The Complaint alleges a single count of patent infringement, alleging that Richar Roulette infringes on US Patent No. 7,699,853, "Card Shuffling Machine." Defendant

Richar filed a Complaint against Plaintiffs INAG and Mark Jones in a separate case on June 8, 2016. 16-cv-1282 ECF No 1. That Complaint alleged claims including intentional interference with prospective economic advantage. The cases were consolidated on August 11, 2016. ECF No. 11. Defendant/Counterclaimant Richar filed a Motion for a Preliminary Injunction on November 11, 2016. ECF No. 30. Defendant/Counterclaimant Richar seeks to enjoin Plaintiff from making allegedly disparaging and defamatory communications to Richar's existing or potential customers.

The Court held a hearing on the Motion for a Preliminary Injunction on January 11, 2017. ECF No. 43. At the hearing the Court made preliminary findings that Richar had satisfied the requirements for a preliminary injunction. Pending the submission of proposed orders as to the scope of injunctive relief, and the issuance of a final order, the court prohibited either party from saying that the Richar Roulette Wheel is not compliant with Nevada or California gaming law or the tribal compact, or that participation in the sale, distribution, or marketing or receipt of the product would result in civil or criminal penalties. The parties submitted their proposed orders on January 24, 2017. ECF Nos. 45, 46.

### III. FACTUAL BASIS

The Court incorporates by reference the factual findings made on the record at the hearing on January 11, 2017, and elaborates as follows:

#### A. Letters and Other Communications

On or around Dec. 2015, Richar launched Richer Roulette, a variation of traditional roulette played in jurisdictions where roulette balls are prohibited, and began marketing and selling its new game in tribal casinos throughout California. On March 31, 2016, Jones sent a mass letter to numerous tribal casinos in California, each of which was an actual or potential Richar customer.

The March 31, 2016, letter includes the following statements (quotation marks come from original):

(1) INAG is filing a patent infringement suit in Nevada against Richar Fitoussi and Richer Roulette.

(2) "Mr. [Richar] Fitoussi would like to have experienced game managers believe that little

game piece bottoms printed with a number constitute a play card under the law. **<u>This is nonsense!!.</u>**" (emphasis in original)

(3) Richar has represented that there is a misunderstanding, but in actuality there is a lawsuit.

(4) Richar has represented that there is ambiguity in the "Compacts" [presumably between tribes and state] as to what the lawmakers meant when they said they stated tribal casinos were allowed to offer any house percentage card game.

(5) Richar Fitoussi's own site states that "Richer Roulette is played with two traditional roulette wheels. <u>Transporting a device that is prohibited across state lines is a violation of the Johnston Act and carries a 1-year minimum jail sentence</u>." (emphasis added)

(6) INAG "fought all the legal battles with the Bureau of Gambling Control and the California Gambling Control Commission to bring Mystery Card Roulette to the Tribal Casinos." No other vendors were willing to take on those legal battles. INAG and the casinos have both benefited from this fight. INAG hopes that the casinos will be loyal to it as it has been to them.

(7) "Mr. Fitoussi also states that this satisfies all state regulations. Who determined this? I am sure it was not the bureau of Gambling Control."

(8) The tribes are currently negotiating with the state over issues with cardrooms. This is not the time to take on the risk of liability of adding another traditional roulette wheel.

(9) INAG will be forced to bring in the California bureau of Gambling Control and the Nevada Gaming Control Board. Two judges have been assigned to this case.

(10) "I will continue to support my customers and defend all our rights as we have worked hard to build this company and service all of you. We will be happy to discuss this with you or your gaming commissions at any time. There will be a letter sent to each of them as well as the Tribal councils."

(11) "Sorry to have to send this letter but I have no choice but to defend my patents and to <u>see that all vendors comply with the provisions of the Compact</u>." (emphasis added)

The letter was followed up with additional communications with Richar's customers

1  stating that Richer Roulette does not conform to state DOJ regulations, and that the product has
2  been "removed" from Valley View casino, where it debuted in December 2015. Jones posted
3  similar statements on Facebook and other social media sites, stating among other things that Richer
4  Roulette was not compliant with California law.

Richar brought its case based on these and other statements. After the initiation of the suit, Jones sent out another letter, on October 7, 2016. The letter includes the following statements:

(1) "We all know there are 2 sides to every story and this is why we have a judicial system to sort through them and determine the facts. I noticed in the court information Richer sent you was a copy of his response to my letter and lawsuit which had a termination date of August 12, 2016. If you would like a copy of the petition we filed (which is still active) I would be happy to send it to you."

(2) INAG is open to answer any questions you have. "These calls must come from you as I am through wasting your time on this matter."

(3) "The infringement is really only 1 part of this matter."

(4) California law allows tribes to offer "any house banked percentage card game." This should be interpreted according to its "ordinary meaning."

(5) "If any of you learned gaming professionals truly think that a game piece similar to those used on board games with a little piece of paper glued to the bottom would reflect what the lawmakers intended when writing the statute, I would love to hear that argument . . . I am a member of the International Masters of Gaming Law and love the law. I study the law as a common lay person and not as an attorney."

(6) "Richar and I will have our day in court and I have a large war chest which I will use to defend our patent."

(7) "I appreciate your continued support and have never made false statements to you and will make myself available anytime you have any questions."

Upon being sent a purchase contract for Richer Roulette, one of Richar's potential customers stated that it was interested but could not risk signing because of Jones' letter regarding the legalities under the tribal compact. INAG has emailed at least 34 casinos regarding the Richar's

alleged patent infringement. Each of these are prospective customers, and at least one, Valley View Casino in Valley View, California, has an existing contractual relationship for Richer Roulette.

Richar has transmitted formal license agreements for Richer Roulette to Morongo Casino in Cabazon, California, and Aqua Caliente Casino in Rancho Mirage, California. Richar Fitoussi received an email from the California DOJ, stating that "in further research the Bureau's Audits and Compact Compliance Section does not need a shipment notification from you because your game is not a slot machine." This was in response to an email asking "My game is not a slot machine it is a card game. Do the DOJ need notification to cross the Nevada/California border?"

### B. Compliance with Tribal Gaming Commission

In its Supplementary Motion, ECF No. 42, Counterclaimant Richar submitted documentary evidence intended to show compliance in the form of (1) a November 9, 2015 press release from Valley View Casino in San Diego, California (which is governed by the San Pasqual Gaming Commission) confirming that Richer Roulette would be launched on the gaming floor at Valley View for operation and use by the public; and (2) a January 13, 2017 letter from Bruce Howard, general manager of the Valley View Casino, stating that every table game of any kind offered to the public in the casino "has to be pre-approved for play by or San Pasqual Gaming Commission, as was yours."

### IV. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit has also held that a preliminary injunction may issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011).

According to this test, a plaintiff can obtain a preliminary injunction by showing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1134-35 (citation omitted).

## V. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. Legal Standard

Intentional interference with contractual relations "is a species of the broader tort of interference with prospective economic advantage." Leavitt v. Leisure Sports, Inc., 734 P.2d 1221 (Nev. 1987). "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." Wichinsky v. Mosa, 847 P.2d 727, 729 (Nev. 1993).

Privilege can exist where a defendant acts to protect her own interest, for example, to protect her interest in a valid contract. Leavitt, 734 P.2d at 1226. "We have held that federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004). "State law claims such as [the tortious interference with prospective economic advantage claim at issue] can survive federal preemption only to the extent that those claims are based on a showing of "bad faith" action in asserting infringement. Accordingly, to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." Id. (internal quotations omitted). "A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers. Accordingly, a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease

its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." Id.

Conduct consistent with free competition, that does not involve interference by "unlawful or improper means" and does not "unjustly enrich" a defendant, is privileged. See Crockett v. Sahara Realty Corp., 591 P.2d 1135, 1137 (Nev. 1979).

**2. Discussion**

The Court finds that Counterclaimant Richar had demonstrated a likelihood of success on the merits or at least a serious question going to the merits on the claim of intentional interference with prospective economic relations. The Court incorporates by reference the findings of fact and conclusions of law made on the record at the hearing on January 11, 2017, and elaborates below.

i. **Prospective Contractual Relationship**

At the hearing on January 11, 2017, INAG's counsel agreed that at least one of the casinos to which Mr. Jones had sent the letters had removed INAG's device and replaced it with the Richar device. Richar also submitted an email communication from an official at the Agua Caliente casino indicating that it could not risk moving forward because of the legal liabilities cited in the Jones letters. Richar has transmitted license agreements for Richer Roulette to Morongo Casino in Cabazon, California, and Agua Caliente Casino in Rancho Mirage, California. There is a limited market for these tribal casinos, and the Jones' communications at issue were sent to every casino in California. The Court finds that Richar has sufficiently demonstrated prospective contractual relationships with casinos within the limited market of California tribal casino's leasing roulette-type devices.

ii. **Knowledge Of The Prospective Contractual Relationship**

The Jones letters by their content reveal INAG and Jones's knowledge of a prospective relationship between Richar and casinos in the market for roulette-type devices. Richar has satisfied this element.

. . .

. . .

. . .

### iii. **Intent To Harm By Preventing Contractual Relationship**

The content of the letters, including the intentional suggestion that contracting could result in jail time, is sufficient to satisfy this element.

### iv. **The Absence Of Privilege**

Conduct consistent with free competition, that does not involve interference by "unlawful or improper means" and does not "unjustly enrich" a defendant, is privileged. See Crockett v. Sahara Realty Corp., 591 P.2d 1135, 1137 (Nev. 1979).

However, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004). "State law claims such as [the tortious interference with prospective economic advantage claim at issue] can survive federal preemption only to the extent that those claims are based on a showing of "bad faith" action in asserting infringement. Accordingly, to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." Id. (internal quotations omitted).

The March 31, 2016 letter contains the following statement, "Richar Roulette is played with two traditional roulette wheels. Transporting a device that is prohibited across state lines is a violation of the Johnston Act and carries a 1-year minimum jail sentence." The letter does not provide, and Plaintiffs have not provided any evidence that there has been any determination that the device violates the Johnston Act, or that the casinos could be subject to criminal liability for leasing the device. The communication did not provide an expert legal opinion or any kind of clear legal analysis, but rather baldly asserts that the device is noncompliant and strongly implies that leasing the device could result in a jail sentence. The second letter purports to provide legal reasoning of Mr. Jones "as a common lay person." It reiterates the assertion of illegality but does not address civil or criminal penalties. Richar has also submitted a copy of a facebook post, responding to an ad for the Richar product, in which Mr. Jones states that "California compacts allow house banked card games only. This is not compliant with ca law." The post provides no further explanation. The Court finds that it was improper and inconsistent with free competition to

send a letter that suggests possible criminal sanctions, including jail time, absent there being a finding or other clear public statement by a regulatory or enforcement body suggesting the product is illegal.[1]

### B. Irreparable Harm

The Court finds that absent an injunction there would be irreparable harm to the professional reputation and prospective professional relationships of Richar, Inc. The communications at issue implied that Richar, Inc. potentially engaged in criminal conduct and sought to market gaming devices that he knew or should have known were illegal under Nevada and California law and not compliant with tribal compacts.

### C. Balance of the Equities

The Court finds that the balance of the equities tips in favor of Richar, Inc. The tailored injunction will not impinge upon Plaintiffs' right to argue that the Richar device is infringing, or to otherwise promote their device in the course of normal competition, but will only limit use of unsubstantiated statements as to the legality of the product and legal consequences that could result from leasing the product. Absent an injunction, Richar Inc. would suffer severe harm to its reputation and business development.

### D. Public Interest

The Court finds that no public interest should bar the injunction. While injunctions limiting speech implicate the First Amendment, commercial speech that is unlawful or misleading is not protected by the First Amendment. American Academy of Pain Management v. Joseph, 353 F.3d 1099, 1106 (9th Cir. 2004). The Court orders only a narrow restriction on specific commercial speech as to unsubstantiated claims involving legal conclusions. INAG and Jones raise no additional public interest arguments extrinsic to their defenses to the tort elements.

. . .

. . .

. . .

. . .

---

[1] The Court need not and does not rely on the content as to patent infringement.

###### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Richar's Motion for a Preliminary Injunction (ECF No. 30) is GRANTED;

**IT IS FURTHER ORDERED** that INAG, Inc., Mr. Jones, and their agents and employees, will cease and desist any further dissemination of statements that Richer Roulette is non-compliant with applicable gaming regulations, statements that Richer Roulette has been removed from any tribal casinos for its purported illegality, or that anyone who might be involved with the purchase, sale, distribution, or receipt of Richer Roulette could be subject to civil or criminal penalties, including potential incarceration, while this lawsuit remains ongoing;

**IT IS FURTHER ORDERED** that INAG, Inc., Mark H. Jones, and any agents or employees, shall remove any such statements made on any website and in advertising or other promotional materials.

This Court has not been asked to rule on the compliance or non-compliance of Richer Roulette under any applicable authority, and therefore makes no such ruling or inference by way of this Order.

**DATED** this 25th day of September, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**