1

2                     UNITED STATES DISTRICT COURT

3                          DISTRICT OF NEVADA

4                                  * * *

5   INAG, Inc. and Mark H. Jones and Sheryle L.         Case No. 2:16-cv-00722-RFB-EJY
    Jones as Trustees of the Mark Hamilton Jones
6   and Sheryle Lynn Jones Family Trust U/A/D
    November 7, 2013,
7                                                                  **ORDER**
                         Plaintiffs,
8
              v.
9
10  Richar, Inc.,

11                       Defendant.

12      **I.    INTRODUCTION**

13          Before the Court are Plaintiffs' Motion for Summary Judgment, (ECF No. 95), Defendant's

14  Cross-Motion for Summary Judgment, (ECF No. 116), and Defendant's Objection to the

15  Magistrate Judge's Order Granting Plaintiffs' Motion to Strike Defendant's Expert Report and

16  Denying Defendant's Motion to Amend, (ECF No. 128).

17          For the reasons stated below, the Court AFFIRMS the Magistrate Judge's Order, DENIES

18  Plaintiffs' Motion for Summary Judgment, and DENIES Defendant's Motion for Summary

19  Judgment.

20

21      **II.   PROCEDURAL HISTORY**

22          This is a patent infringement case involving two competitors who are involved in the

23  manufacture and sale of roulette-style casino games.

24          Plaintiffs filed the Complaint in this case on March 31, 2016. ECF No. 1. On June 8, 2016,

25  Defendant filed suit in this Court against Plaintiffs, alleging that the patent at issue is invalid. See

26  2:16-cv-01282-RCJ-CWH. Plaintiffs amended their complaint and demanded a jury trial on June

27  27, 2016. ECF No. 5. On August 16, 2016, this Court consolidated the two cases under the instant

28

1   case number. ECF Nos. 11, 16. Defendant filed an answer the same day, alleging that the '853

2   Patent is void, invalid, and unenforceable. ECF No. 13.

3        Pursuant to the District of Nevada's Local Patent Rules, Plaintiffs filed their Infringement

4   Contentions on November 4, 2016. ECF No. 31. Defendant filed its Non-Infringement, Invalidity,

5   and Unenforceability Contentions on December 8, 2016, and served Supplemental Contentions on

6   January 31, 2017. ECF Nos. 99-3, 99-4.

7        Plaintiffs filed an opening claim construction brief on March 20, 2017. ECF No. 58.

8   Defendant filed its response on April 17, 2017. ECF No. 61. Plaintiffs filed their reply on May 1,

9   2017. ECF No. 64. The Court held a claim construction hearing on July 20, 2018. The parties

10  submitted simultaneous supplemental claim construction briefs on August 13, 2018.

11       Defendant filed an Ex Parte Reexamination ("EPR") petition with the USPTO on October

12  7, 2019, seeking to invalidate all asserted claims of the patent at issue in this case (U.S. Patent No.

13  7,669,853 (the "853 Patent")). In sum and substance, Defendant argued that various prior art

14  references, including the Wheel of Fortune's "Bonus Wheel" (the "Bonus Wheel"), singularly or

15  in combination with other patents, rendered the '853 Patent's claims obvious or anticipated.  The

16  USPTO rejected this primary basis for reexamination.

17       On July 16, 2020, this Court issued a Claim Construction Order. ECF No. 84. The parties

18  agreed to a Post-Claim Construction Scheduling Order on July 30, 2020. ECF No. 87. Pursuant to

19  that Scheduling Order, the parties agreed to conclude fact discovery by August 31, 2020, to

20  exchange opening expert reports by September 30, 2020, to exchange rebuttal expert reports by

21  October 30, 2020, and to conclude expert discovery by December 14, 2020. Ibid.

22       The parties engaged in unsuccessful settlement discussions on August 18, 2020. ECF No.

23  89. On October 30, 2020, Plaintiffs moved for summary judgment. ECF No. 96. Defendant

24  responded on November 20, 2020, ECF No. 104, and Plaintiffs replied on December 4, 2020, ECF

25  No. 108. In the interim, on November 2, 2020, Plaintiffs filed a Motion to Strike the Expert Report

26  of Defendant's expert, Stacy Friedman. ECF No. 99. Defendant responded to the Motion to Strike

27  on November 16, 2020, ECF No. 101, and filed a Motion for Leave to Amend its invalidity

28

1     contentions on November 18, 2020. ECF No. 103. Plaintiffs replied on November 23, 2020. ECF

2     No. 106.

3         On January 13, 2021, Defendant cross-moved for summary judgment. ECF No. 116.

4     Plaintiffs responded on February 10, 2021, ECF No. 120, and Defendant replied on March 3, 2021,

5     ECF No. 126.

6         On April 22, 2021, Magistrate Judge Youchah entered an Order granting Plaintiffs' Motion

7     to Strike Defendant's Expert Report in its entirety and denying Defendant's Motion to Amend.

8     ECF No. 127. Defendant filed an objection of Judge Youchah's Order on May 6, 2021. ECF No.

9     128. Plaintiffs responded on May 20, 2021. ECF No. 129.

10        This omnibus order follows.

11

12    **III.**     **BACKGROUND OF THE PATENT & THE ALLEGED INFRINGING PRODUCT**

13         **A. The '853 Patent**

14        Plaintiff INAG, Inc. is a Nevada corporation specializing in the development, manufacture,

15     and distribution of casino table games and related equipment, particularly in Tribal casinos.

16     Through its President and principal shareholder Mark H. Jones ("Jones"), Plaintiff developed a

17     novel casino machine and method that replicates a roulette-style table game. The machine, sold

18     and marketed as the Mystery Card Roulette ("MCR"), uses cards – rather than a roulette ball – to

19     determine a winning outcome. Plaintiff developed this novel method in response to bans in

20     California and Oklahoma on table games that employ roulette balls.

21        Plaintiff sought patent protection for its machine and method from the United States Patent

22     and Trademark Office ("USPTO"). Plaintiff's application was initially rejected as obvious in light

23     of prior art on February 3, 2009. In April 2009, Plaintiff responded to the rejection by emphasizing

24     that the invention was unique for its use of a "radially outermost stop" for the trays on its turntable.

25     The examiner rejected this response on July 14, 2009, noting that Plaintiff had not sufficiently

26     explained how the "radially outermost stop" "provides an advantage" over prior art which

27     performs the "same function." Plaintiff requested reconsideration on October 8, 2009 and argued

28     that the "radially outermost stop" constituted a "direct improvement" over prior art, because it

provided that "no matter what centrifugal forces are applied to the cards [] located in the Applicant's turntable [], they cannot be dislodged by excessive centrifugal forces."

The examiner agreed with this final argument, and on March 2, 2010, the USPTO awarded Plaintiff the '853 Patent, entitled "Card Shuffling Machine." In approving Plaintiff's claims, the examiner observed that it agreed with INAG's argument that the claimed "'radially outermost stop' prevents cards from being dislodged and thrown or slid out of the wheel by excessive centrifugal forces. Also, the 'radially outermost stop' prevents cards from creeping out of their trays, thereby maintaining the cards in an evenly aligned row around the wheel."

The '853 Patent consists of twenty claims. Plaintiffs allege that Richer Roulette infringes the following four claims:

> **Claim 1:** A card shuffling machine for singulating a card from among a set of cards in a game of chance, said machine comprising:
> [a] a stationary base for establishing a generally vertical central axis;
> [b] a turntable moveably supported above said base for free rotation within a generally horizontal plane about said central axis;
> [c] said turntable including a defined plurality of trays, said trays equally circumferentially spaced apart one from another about said central axis, each said tray including a radially outermost stop;
> [d] said turntable further including a plurality of dividers, said plurality of dividers being equal in number to said defined plurality of trays and spaced on from another in equal circumferentially-spaced increments about said central axis;
> [e] a detent fixed relative to said base and operatively interactive with said dividers, said detent effective to apply a pulsating resistance to free rotation of said turntable and thereby progressively slow said turntable to a stopped condition relative to said base;
> [f] a set of cards equal in number to said defined plurality of trays, each said card bearing an indicia related to a decision for a game of chance; and
> [g] one said card removably disposed in each of said trays, whereby a random one of said cards is singulated from said set of cards by progressively slowing a free rotating said turntable to rest through the interference of said detent.
>
> **Claim 10**: The card shuffling machine according to claim 1 including a pointer fixed relative to said base for indicating one of said plurality of trays.
>
> **Claim 16:** A method for playing a game of chance with a rotary card shuffling machine, said method comprising the steps of:
> [a] providing a stationary base for establishing a generally vertical central axis;
> [b] moveably supporting a turntable above the base for free rotation within a generally horizontal plane about the central axis;
> [c] forming a plurality of trays in the turntable that are equally circumferentially

spaced apart one from another about the central axis, each tray having a radially outermost stop;

       [d] providing a set of cards equal in number to the plurality of trays, each card bearing an indicia related to a decision for a game of chance;

       [e] removably disposing one card in a respective tray adjacent its stop;

       [f] providing a bet selection region;

       [g] making a forecast on the outcome of said game of chance by associating a marker on the bet selection region with at least one of many possible game outcomes;

       [h] accelerating the turntable to a maximum rotating speed with the cards retained in their respective trays against the influence of centrifugal forces by the stop at the radially outermost portion of the trays and then allowing the turntable to freely rotate about the central axis;

       [i] progressively slowing the free rotating turntable;

       [j] stopping the turntable at a random angular position relative to the base;

       [k] removing at least one card from its respective tray in response to the random angular position of the turntable relative to the base; and

       [l] announcing a game decision based on the indicia of the at least one card removed from its tray.

**Claim 17:** The method for playing a game of chance according to claim 16 wherein said step of announcing a game decision including displaying an image of the one card removed from its tray on a video monitor.

### B.  Richar's Allegedly Infringing Game

Defendant Richar, Inc. is an Oklahoma corporation engaged in the manufacture, sale, and offer for sale of a casino table game called "Richer Roulette." The Richer Roulette is a game of chance, wherein a dealer spins the roulette wheel and identifies a number affixed to a game piece. Plaintiffs allege that Defendant's Richer Roulette game infringes the '853 Patent, and that the Richer Roulette has displaced the MCR in at least five casinos that previously carried INAG's machine.

### C.  The Court's Claim Construction Order

This Court's Claim Construction Order found the following terms appearing in the asserted claims to be undisputed: "above," "interference," "card(s)," and "detent fixed relative to said base and operatively interactive with said divider." Accordingly, the Court directed that these terms are to be given their plain and ordinary meaning.

The Court's Order found the following terms to be in dispute: "tray," "dividers," and "maximum." The Court found the proper construction of "tray" to be "a semi enclosed receptacle

sized to receive and hold a card"; "dividers" to be "structures equal in number to the receptacles and configured to interact with the detent"; and "maximum" to be "a rate sufficient to achieve a random outcome."

## IV.   DEFENDANT'S OBJECTION TO THE ORDER STRIKING ITS EXPERT REPORT AND DENYING ITS MOTION TO AMEND

Before this Court turns to Plaintiffs' and Defendant's cross-motions for Summary Judgment, it must first address Defendant's Objections to Magistrate Judge Youchah's Order Striking Defendant's Expert Report and Denying Defendant's Motion to Amend, as the Court's ruling on Defendant's Objections impacts its evaluation of the summary judgment motions.

This Court has reviewed Defendant's Objections, ECF No. 128, and affirms the Magistrate Judge's Order.

### A.   LEGAL STANDARD

This Court "must consider timely objections" to any non-dispositive order issued by a magistrate judge, and may modify or set aside any part of a magistrate judge's order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); see also LR IB 3-1. A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Burdick v. Comm'r IRS, 979 F.2d 1369, 1370 (9th Cir. 1992). A magistrate judge's pretrial order issued under 28 USC 636(b)(1)(A) is not subject to de novo review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." Grimes v. City & Cnty. of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

### B.   ANALYSIS

In her September 30, 2020 report (the "Friedman Report" or "Report"), Defendant's expert Stacy Friedman opined that Claims 1, 10, 16, and 17 of the '853 Patent are rendered invalid by four prior art references: the Wheel of Fortune's "Bonus Wheel," U.S. Patent No. 3,841,637 to Piazza (the "Piazza Patent"), U.S. Patent No. 6,616,530 to Pearce, et al. (the "Pearce Patent"), and U.S. Patent No. 5,636,838 to Caro (the "Caro Patent"). Specifically, the Friedman Report found that the Bonus Wheel anticipated Claims 1 and 10 and rendered obvious Claims 1, 10, 16, and 17.

The Report further concluded that the Bonus Wheel, in combination with the Piazza, Pearce, and Caro Patents, rendered the '853 Patent obvious.

Plaintiffs moved to strike the Friedman Report in its entirety based on Defendant's alleged failure to disclose its invalidity theories in either its initial Non-Infringement, Invalidity, and Unenforceability Contentions, or in its Supplemental Contentions (collectively, the "Contentions"). Specifically, Plaintiffs argued that Defendant failed to disclose the Bonus Wheel in its Contentions, and that each prior-art based invalidity argument opinion relies at least in part on the undisclosed Bonus Wheel. Plaintiffs further argued that the Friedman Report relied on several prior art references in its "Background to the Technology" section that were also undisclosed in Defendant's Contentions – including, for instance, references to "Scarne's New Complete Guide to Gambling" and "California Roulette and California Craps as House-Banked Card Games." Finally, Plaintiffs alleged that the Friedman Report found that the asserted claims were invalid for lack of written description and enablement and as indefinite under 35 USC § 112 – invalidity theories also not disclosed in Defendant's Contentions. Because every opinion presented in the Report as to the '853 Patent's invalidity relied on theories and prior art references not disclosed in Defendant's Contentions, Plaintiff requested that the entire Report be stricken.

Defendant responded that Plaintiffs were put on sufficient notice of Defendant's position that the Bonus Wheel invalidates the '853 Patent through the October 2019 USPTO EPR petition and other documents and filings. Defendant added that the Friedman Report's opinions on invalidity for "lack of written description and enablement and as indefinite" also should not be stricken, because those opinions "were first contemplated just as the Friedman Report was being finalized," and would thus have been "literally impossible for Defendant to disclose" in its earlier Contentions. Defendant later filed a Motion for Leave to Amend its Invalidity Contentions, in which it omitted all previous invalidity Contentions which relied solely on the Caro, Piazza, and Pearce Patents, and replaced those Contentions with disclosures regarding the Bonus Wheel as prior art.

On April 22, 2021, Magistrate Judge Youchah granted Plaintiffs' Motion to Strike and denied Defendant's Motion to Amend. Judge Youchah noted that under the District of Nevada's

Local Patent Rules, parties opposing a claim of patent infringement must serve upon all other parties Non-Infringement, Invalidity, and Unenforceability Contentions that disclose all contentions of invalidity, including identifications of prior art alleged to render the asserted claims obvious. Order at 5 (quoting LPR 1-8). Judge Youchah observed that amendments to a party's Contentions are permitted within 30 days of a Court's Claim Construction order and may not be made later absent a showing of good cause. Ibid. (quoting LPR 1-18a, -12). These scheduling rules and conservative amendment requirements, Judge Youchah emphasized, exist to "prevent the 'shifting sands' approach to claim construction," and both the Federal Circuit and Ninth Circuit Courts of Appeals have granted District Courts ample leeway to strictly enforce their local patent rules and scheduling orders. Id. at 5-6 (citations omitted).

Judge Youchah found that Defendant "waited, at most, thirteen months (from the date of the USPTO request), or at the very least, four months (from the date of the Court's Claim Construction Order) to seek amendment" of its Contentions, despite having known about the Bonus Wheel since as early as October 2019. She noted that Defendant did not "adequately explain what kept it from doing so," and rejected Defendant's argument that the case was "on ice" between July 30, 2018, when this Court held the Claim Construction hearing, and July 16, 2020, when it issued its Claim Construction Order. Judge Youchah further rejected Defendant's argument that the USPTO EPR constituted a sufficient disclosure for the purposes of satisfying the LPR, because the USPTO declined to consider the Bonus Wheel as prior art. Finding that Defendant failed to act with sufficient diligence in amending its Contentions, Judge Youchah concluded that good cause did not exist for Defendant to belatedly amend its disclosures. Judge Youchah granted Plaintiffs' Motion to Strike the Report in its entirety, reasoning that every substantive portion of the Report relied upon undisclosed theories of invalidity.

In its objection to Judge Youchah's order, Defendant reasserts many of the same arguments raised in its initial Response to Plaintiffs' Motion to Strike. Defendant primarily argues that it repeatedly disclosed its Bonus Wheel prior art contentions through its filing of the EPR in October 2019, and thereafter through supplemental discovery responses, deposition testimony, meet-and-confer conversations with Plaintiffs' counsel, Rule 26 disclosures, and settlement discussions.

Defendant adds that "virtually no discovery or docket activity took place between *either party*" between August 2018 and July 2020, when the Court issued its Claim Construction Order. Defendant suggests that it had "no reason to rush to further amend its contentions" before receiving this Court's Order, particularly in light of the disclosures of the Bonus Wheel that Defendant contends it made through "prior filings and discovery."

The Court does not find that the Magistrate Judge's decision is clearly erroneous or contrary to law. Judge Youchah properly applied the clearly stated language of the Local Patent Rules, which provide that parties opposing a claim of infringement must include in their Contentions, *inter alia*, "a detailed description of the factual and legal grounds for contentions of invalidity . . . including an identification of the prior art relied upon," "[w]hether each item of prior art anticipates each asserted claim or renders it obvious," and "[a] chart identifying specifically where in each alleged item of prior art each limitation of each asserted claim is found." LPR 1-8. Alternatively, the parties must amend their Contentions to include these details "[w]ithin 30 days of a Claim Construction Order." LPR 1-18a. Judge Youchah examined Defendant's USPTO EPR request and found not only that the EPR failed to disclose all of the theories in the Friedman Report, but also that the EPR could not constitute sufficient notice because the examiner squarely rejected the EPR on the basis that Defendant could not show that the Bonus Wheel was published *prior to* the '853 Patent. In other words, because the USPTO could not confirm that the Bonus Wheel was prior art, Plaintiffs could not rely on the EPR for the purposes of prior art disclosure, and Defendant should have been more greatly incentivized to amend its invalidity contentions for clarity. Judge Youchah further examined all of the non-EPR documents and filings that Defendant has asserted contain the required disclosures and concluded that "none of them included invalidity charts or other details required by LPR 1-8." In light of Defendant's omissions and failure to diligently amend its Contentions as required by the local rules, Judge Youchah properly concluded that none of the good cause bases for belated amendment apply, and acted within her discretion to deny Defendant's Motion to Amend.[1]

---

[1] Good cause bases include "material changes to the other party's contentions," "recent discovery of material prior art despite earlier diligent search," and "recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search." LPR 1-12.

Defendant contends that the Order "commits further error in holding that Plaintiffs would suffer prejudice from [Defendant's] expert report or proposed [amended] contention," because Plaintiffs have known about Defendant's invalidity arguments "for several years," and have even responded to the Bonus Wheel invalidity theories through their own rebuttal expert report and in their summary judgment briefing. Because the Magistrate Judge properly found that Defendant failed to act diligently in moving to amend its infringement contentions, the question of prejudice to Plaintiffs need not be addressed. See O2 Micro Intern. Ltd. V. Monolithic Power Systems, Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) ("Having concluded that the district court could properly conclude that O2 Micro did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to MPS."). That said, however, this Court agrees with Judge Youchah that any prejudice to Plaintiffs is not negated by the mere fact that Plaintiffs did their due diligence in responding to Defendant's improperly disclosed invalidity theories. Nor does Plaintiffs' thorough response excuse Defendant of its obligation to comply with the local rules.

Defendant also raises the following new arguments not previously presented to the Magistrate Judge: (1) the initial and post-claim construction scheduling orders did not mention LPR 1-18a, which excuses Defendant's failure to comply with the Rule; (2) Plaintiffs drafted the post-Claim Construction Order and thus either intentionally omitted LPR 1-18a, or implicitly acknowledged its notice of the Bonus Wheel by omission of LPR 1-18a; (3) under the prior version of the Rule, Defendant could have amended contentions at any time before the close of discovery; and (4) Judge Youchah could have imposed less stringent sanctions, such as by striking only those arguments that had never been raised before, or reopening unilateral fact discovery regarding the Bonus Wheel. This Court agrees with Plaintiffs that Defendant has waived these arguments by failing to present them in the first instance to the Magistrate Judge. See Greenhow v. Sec'y of Health & Human Servs., 863 F.2d 633, 638-39 (9th Cir. 1988) (stating that it would "frustrate the purpose of the Magistrates Act" to "allow[] parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court"), overruled on other grounds by United States v. Hardesty, 977 F.2d 1347 (9th Cir. 1992); see also

Pinder v. Byrnes, 2020 U.S. Dist. LEXIS 140032, *6 (D. Nev. Aug. 5, 2020), Global Experience Specialists, Inc. v. Cunniffe, 2014 U.S. Dist. LEXIS 103902, *3-4 (D. Nev. July 30, 2014).

This Court concludes that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law. Because each opinion set forth in the Friedman Report relies upon theories or prior art references undisclosed in Defendant's Contentions, and only the description of the patent, the file history, and the background of the technology are unaffected by Defendant's omissions, the Magistrate Judge acted within her discretion to strike the Friedman Report in its entirety. See Howmedica Osteonics Corp. v. Zimmer, Inc., 822 F.3d 1312, 1324 (Fed. Cir. 2016) (affirming the district court's decision to strike a belatedly disclosed theory of infringement and stating that "[a]lthough the result may seem harsh," the district court committed no abuse of discretion in applying "its rather clearly stated rule"). As stated above, Judge Youchah also acted in accordance with law and committed no mistake in denying Defendant's Motion to Amend.

## V.   PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

This Court has reviewed Plaintiffs' Motion for Summary Judgment, Defendant's Response, Plaintiffs' Reply, and all corresponding exhibits. The Court has also reviewed Defendant's Cross-Motion for Summary Judgment, Plaintiffs' Response, Defendant's Reply, and all corresponding exhibits. For the reasons set forth herein, the Court denies both motions.

### A.  LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

The Court applies a burden-shifting analysis to motions for summary judgment. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden either by presenting evidence to negate an essential element of the nonmoving party's case, or by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

If the movant has carried its burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. Matsushita, 485 U.S. at 586. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita, 475 U.S. at 586-87).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." Id. However, unauthenticated documents produced by the opposing party in discovery may be considered where the opposing party did not contest their authenticity. See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (holding that the district court did not err in admitting documents where the opposing party produced the documents and did not contest their authenticity).

**B.  ANALYSIS**

**1.  Plaintiffs' Motion for Summary Judgment**

Based on the Court's construction of the disputed claim terms, see ECF. No. 84, and the discovery conducted in this case, Plaintiffs seek summary judgment on Claim 16. They argue that Defendant's Richer Roulette literally infringes Claim 16. They further contend that they are entitled to summary judgment on the question of indirect infringement, because the undisputed

facts demonstrate that Defendant both induced and contributed to the infringement of the '853 Patent.

### a. **Literal Infringement**

A party literally infringes a patent when it, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 USC § 271(a). A determination of literal infringement requires a two-step analysis. Wright Medical Technology, Inc. v. Osteonics Corp., 122 F.3d 1440, 1443 (Fed. Cir. 1997). First, the court must construe the asserted claims as a matter of law to determine their meaning and scope. Ibid. The second step "is an analysis of infringement, in which it must be determined whether a particular device infringes a properly construed claim." Ibid. A device or product literally infringes a patented invention if every one of the limitations within the asserted claims is found in the accused device – if even one limitation is missing or is not met as claimed, there is no literal infringement. Ibid.; Mas-Hamilton Grp. V. Lagard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citation omitted). Alternatively, the allegedly infringing device or product may infringe under the doctrine of equivalents "if every limitation of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an 'equivalent' differs from the claimed limitation only insubstantially." Ibid. (quoting Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998)). Infringement is a factual determination – thus the question for the Court at the summary judgment stage is whether any genuine issue of material fact exists as to infringement. Ibid. (citing Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

Plaintiffs allege that Defendant literally infringes Claim 16 because the Richer Roulette contains every limitation within the asserted claim. Defendant opposes summary judgment and contends that a genuine dispute of material fact exists with respect to whether the Richer Roulette contains the following four limitations within Claim 16: [a] "providing a stationary base for establishing a generally vertical axis"; [c] "forming a plurality of trays in the turntable that are equally circumferentially spaced apart one from another about the central axis, each tray having a radially outermost stop"; [d] "providing a set of cards equal in number to the plurality of trays,

each card bearing an indicia related to a decision for a game of chance"; and [j] "stopping the turntable at a random angular position relative to the base."

First, the Court finds that no genuine dispute of material fact exists as to whether the Richer Roulette contains limitation [a] – "providing a stationary base for establishing a generally vertical axis." Plaintiff has carried its initial burden by citing to Defendant's Non-Infringement, Invalidity, and Unenforceability Contentions as well as its Supplemental Contentions, in which Defendant failed to dispute that the Richer Roulette contains this limitation. Plaintiff has also pointed to Defendant's utility patent application, which identifies the Richer Roulette's outer ring and bowl as constituting a "base," fixed to define a single generally vertical axis.

Defendant argues that a dispute exists as to whether the Richer Roulette's outer ring or "marker-cylinder" is a "stationary" base. Defendant argues that because the outer ring "necessarily rotates whenever the game is being played," it is not "stationary" within the meaning of limitation [a]. Defendant also contends that Plaintiffs may not reference Defendant's patent application to support its claim of infringement, as only the "end product which actually operates on casino floors" is subject to an infringement analysis. While the latter is true, the Court finds persuasive the fact that Defendant *did not dispute* that the Richer Roulette contains limitation [a] in its Contentions. And indeed, Defendant's Response to Plaintiffs' Motion for Summary Judgment even concedes that "Richer Roulette does include a stationary component upon which the entire device rests." Thus, Defendant has not carried its burden of producing competent evidence that shows a genuine issue for trial with respect to limitation [a]. See Celotex Corp., 477 U.S. at 324.

The Court finds that a genuine dispute of material fact *does* exist as to limitation [c] – "forming a plurality of trays in the turntable that are equally circumferentially spaced apart one from another about the central axis, each tray having a radially outermost stop." Unlike with limitation [a], Defendant has not conceded that the Richer Roulette contains this limitation. Defendant alleged in its Non-Infringement, Invalidity, and Unenforceability Contentions that the Richer Roulette "does not include a plurality of trays in the turntable that are equally circumferentially spaced apart one from another about the central axis, each tray having a radially

1    outermost stop," and added in its Supplemental Contentions that "[t]he Game does not include a

2    defined plurality of trays."

3        Pointing to deposition testimony of Richar Fitoussi, President of Richar, Inc., Plaintiffs

4    argue that it is undisputed that Richer Roulette "contains 38 structures formed in a rotating

5    structure that are sized to hold what it previously called 'cards' – but now calls 'tiles,'" and that

6    these structures "are enclosed on all sides except for an open top." In other words, these structures

7    "are thus 'semi enclosed receptacles'" – the construction that this Court adopted for the term

8    "trays." Further, Plaintiffs contend there is "no genuine dispute that Richer Roulette's trays include

9    a radial outer most stop," as the trays in the Richer Roulette have a far wall that keep cards in place

10    during rotation. Compare Figure A and Figure B, below:



**Figure A: Richer Roulette outermost wall        Figure B: MCR outermost wall**

(both images copied from Plaintiffs' Motion for Summary Judgment)

22        Defendant responds that the Richer Roulette does not contain "trays" with a "radially

23    outermost stop." Defendant argues that the Court's Claim Construction Order rejected Plaintiffs'

24    proffered definition of "trays" – "an open receptacle sized to receive and hold a card" – in favor

25    of a narrower definition – "*a semi enclosed receptacle* sized to receive and hold a card" – because

26    a defining feature of the MCR's receptacles is that they are "more enclosed in order to secure and

27    hold the card against 'excessive centrifugal forces.'" (emphasis added). Citing the results of a test

28    set forth in Stacy Friedman's Rebuttal Expert Report (the "Friedman Rebuttal Report,") Defendant

argues that the Richer Roulette's game pieces, when subjected to excessive centrifugal forces, do in fact exit the receptacles. See Figure C below:



**Figure B** (copied from Friedman Rebuttal Report, at 22)

Thus, because the Richer Roulette's receptacles do not stop the inserted game pieces from escaping when subjected to excessive centrifugal forces, Defendant contends that a highly contested issue of material fact exists as to whether or not the Richer Roulette contains "a plurality of trays . . . each tray having a radially outermost stop." Plaintiffs reply that it matters not whether the Richer Roulette's game pieces can come out of the *top* of the product, but whether they can migrate radially – in other words, whether they can exit the wheel by sliding out horizontally. Plaintiffs rely on the fact that the USPTO granted Plaintiffs' patent application based on the card shuffling machine's unique ability to prevent cards from "individually creep[ing] out." Because Defendant has not identified evidence that the Richer Roulette's game pieces slide, creep, or migrate out radially, there is no genuine issue of material fact that limitation [c] exists in the allegedly infringing machine.

The Court finds that Defendant has established that a genuine dispute of material fact exists as to whether the Richer Roulette contains limitation [c]. In concluding that the term "tray" means a "semi enclosed receptacle sized to receive and hold a card," the Court emphasized that the USPTO allowed the '853 Patent "based upon the novelty of the 'radially outermost stop' integrated into the tray or receptacle," which "prevents cards from being *dislodged, and thrown or slid out of*

*the wheel by excessive centrifugal forces*." (emphasis added). Order at 8. The Court's construction was not narrowly cabined to the concept of horizontal migration, as Plaintiffs contend. The terms "dislodged" and "thrown out" suggest that the game pieces may come out of the wheel in any direction. By noting that the USPTO found that the trays prevent cards from being "dislodged," "thrown out," or "slid out" of the wheel, the Court sought to impose the "broadest construction of the term [tray] which is still consistent with the intrinsic evidence." Id. at 9. The Friedman Rebuttal Report creates at least a question as to whether the Richer Roulette's receptacles prevent the game pieces from being "dislodged," "thrown out," or "slid out." It is not this Court's role to determine or weigh the strength of that evidence, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986), but only to determine whether it creates a genuine dispute of material fact. The Court does find at this stage that a triable dispute exists as to whether the Richer Roulette's receptacles constitute "trays" with a "radially outermost stop" as required by limitation [c].

The Court further finds that a genuine dispute of material fact exists as to whether the Richer Roulette contains limitation [d] – "providing a set of cards equal in number to the plurality of trays, each card bearing an indicia related to a decision for a game of chance." The parties do not appear to dispute the meaning of the term "card," but rather, whether the Richer Roulette in fact involves "cards." Plaintiffs proffer the dictionary definition of the word "card" – "a flat stiff usually small and rectangular piece of material (such as paper, cardboard, or plastic) usually bearing information" – and note that prior to the instant suit, Defendant "uniformly and consistently referred" to its game pieces as "cards," as demonstrated through Youtube instructional videos and written instructions that Defendant sent to customers. Plaintiffs contend that Defendant now calls its game pieces "tiles" to get around limitation [d] – as such, Plaintiffs argue that whatever dispute might exist is not actually genuine.

Defendant, in response, argues that Plaintiffs' evidence is internally contradictory, as Plaintiffs' expert Mark Nicely has offered a different definition of "card" – namely, a device which can "1) incorporate or affix a visible indicium, 2) be placeable into a Tray, 3) be removable from a Tray, and 4) after being placed into a Tray, remain within a Tray until purposefully removed." Defendant states that it does not agree with Plainttifs' proffered definition of the term "card," but

does not offer its own definition for the term. Rather, Defendant's contention appears to be that even if Plaintiffs' proffered dictionary definition for "card" is accepted, there remains a material dispute of fact as to whether Defendant's game pieces are in fact "flat stiff usually small and rectangular piece[s] of material." Defendant submits that its game pieces are more akin to tiles, and that Plaintiffs' definition would "absurdly re-classify all dominoes, dice, majhong pieces, scrabble letters, or other gaming tiles as 'cards.'"

This Court's Claim Construction Order dictated that the term "card" is to be given its plain and ordinary meaning. The plain and ordinary meaning of a claim term may be ascertained from "the intrinsic evidence of record such as the claims themselves . . . but also from the 'common understanding' of the terms that may be reflected in dictionaries, encyclopedias, and treatises." W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC, 370 F.3d 1343, 1350 (Fed. Cir. 2004). Accordingly, this Court accepts Plaintiffs' proffered dictionary definition and finds that the term "card" means "a flat stiff usually small and rectangular piece of material (such as paper, cardboard, or plastic) usually bearing information." See "Card," Merriam-Webster Dictionary (last viewed September 27, 2021). Having fixed the definition of the term "card," the Court finds that a genuine dispute of material fact exists as to whether Defendant's game pieces constitute "cards." Whether Defendant's game pieces are "flat stiff usually small and rectangular pieces of material . . . usually bearing information" is precisely the type of question of fact that must be decided by a jury.

Finally, the Court finds no genuine dispute of material fact as to limitation [j] – "stopping the turntable at a random angular position relative to the base." As with limitation [a], Defendant has conceded that the Richer Roulette contains this limitation, as Defendant failed to claim any missing elements with respect to limitation [j] in its Contentions. Defendant argues that the Richer Roulette "lacks any component or function to 'stop' the wheel once it is spun," and thus it cannot possibly contain the limitation for "stopping the turntable . . . ." The Court agrees with Plaintiffs that this claim is unsupported by the record, as Mr. Fitoussi admitted in two separate depositions that a "mechanism or function" – specifically, the "plunger" within the Richer Roulette – causes the wheel's rotation to slow, and to eventually stop.

1    In sum, the Court finds that a genuine dispute of material fact exists with respect to whether

2    the Richer Roulette contains two of the twelve limitations of Claim 16: limitation [c] – "forming

3    a plurality of trays in the turntable that are equally circumferentially spaced apart one from another

4    about the central axis, each tray having a radially outermost stop"; and limitation [d] – "providing

5    a set of cards equal in number to the plurality of trays, each card bearing an indicia related to a

6    decision for a game of chance." The Court rejects Defendant's arguments that there exists a

7    genuine dispute of material fact with respect to limitations [a] and [j]. Because Defendant has not

8    contested the existence of the other eight limitations contained within Claim 16, the Court finds

9    that a jury need only determine whether the Richer Roulette contains limitations [c] and [d].

10             **b.   Indirect   Infringement:   Induced   and   Contributory**

11                **Infringement**

12   In addition to literal infringement, Plaintiffs also allege claims under 35 USC § 271(b) for

13   induced infringement and 35 USC § 271(c) for contributory infringement. Plaintiffs contend that

14   no genuine dispute of material fact exists as to whether defendant induced and contributed to

15   infringement of the '853 Patent.

16   35 USC § 271(b) provides that "[w]hoever actively induces infringement of a patent shall

17   be liable as an infringer." To prove induced infringement, the patentee must first prove direct

18   infringement. Toshiba Corp. v. Imation Corp., 681 F.3d 1358, 1363 (Fed. Cir. 2012) (quotations

19   omitted). Direct infringement occurs "where all steps of a claimed method are performed by or

20   attributable to a single entity." Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020,

21   1022 (Fed. Cir. 2015) (citation omitted). When more than one actor is involved in the performance

22   of method steps, a single entity may still be held liable "(1) where that entity directs or controls

23   others' performance, and (2) where the actors form a joint enterprise." Ibid. An entity may direct

24   or controls another's performance if it "contracts with another to perform one or more steps of the

25   claimed method" or "conditions participation in an activity or receipt of a benefit upon

26   performance of a step or steps of a patented method and establishes the manner or timing of that

27   performance." Id. at 1023. After establishing direct infringement, a patentee seeking to prove

28

1   induced infringement must next show that the alleged infringer "knowingly induced infringement

2   and possessed specific intent to encourage another's infringement." Ibid. (citations omitted).

3        A party is liable for contributory infringement if it "offers to sell or sells within the United

4   States or imports into the United States . . . a material or apparatus for use in practicing a patented

5   process, constituting a material part of the invention, knowing the same to be especially made or

6   especially adapted for use in an infringement of such patent, and not a staple article or commodity

7   of commerce suitable for substantial noninfringing use." 35 USC § 271(c). As with induced

8   infringement, a patentee bringing a claim for contributory infringement must first prove direct

9   infringement. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1320 (Fed. Cir. 2009) (citations

10  omitted). It must then prove that the infringer "knew that the combination for which its components

11  were made was both patented and infringing," and that the components have "no substantial non-

12  infringing uses." Ibid. (citations omitted).

13       Plaintiffs allege that the threshold requirement of proving direct infringement is satisfied

14  by its literal infringement analysis. They further point to three pieces of evidence that they contend

15  show that Defendant "knowingly induced infringement": (1) Mr. Fitoussi testified that he viewed

16  INAG's MCR prior to requesting that his counsel determine whether a INAG possessed a patent

17  on the MCR; (2) Mr. Fitoussi's counsel informed him that the MCR was patented; and (3) Mr.

18  Fitoussi admitted that, prior to viewing the MCR, he was asked to create a game that "will put . . .

19  all other California Roulette games out of business." These pieces of testimony, Plaintiffs allege,

20  establish that Fitoussi knew of the '853 Patent, and knew that he was inducing infringement of that

21  patent. Plaintiffs further contend that Defendant had the specific intent to induce infringement of

22  the '853 Patent, because Defendant provided to customers instructions to the Richer Roulette that

23  infringed the patented method.

24       Plaintiffs assert a similar theory with respect to their contributory infringement claim. They

25  again allege that the undisputed facts demonstrate that the Richer Roulette directly infringes the

26  '853 Patent, and that Defendant knew that the method employed by the Richer Roulette was both

27  patented and infringing. Plaintiffs further allege that Defendant has provided no evidence that there

28  exists any method for playing the Richer Roulette other than the method contained in its

instructions, which it distributes to customers and potential customers; Defendant thus fails to identify any "substantial non-infringing uses."

Defendant responds that Plaintiffs cannot establish the threshold showing that Defendant committed direct infringement, as required for Plaintiffs' claims of both induced and contributory infringement, because the asserted claims necessarily involve the actions of third-party casino operators and casino guests. These third parties, Defendant argues, are not directed or controlled by Defendant, or engaged in a joint enterprise with Defendant, and thus their actions cannot be attributed to Defendant for the purposes of proving direct infringement.

The Court denies Plaintiffs' motion for summary judgment on the questions of induced and contributory infringement for two reasons. First, for the reasons stated in the Court's literal infringement analysis, a genuine question of material facts exists with respect to whether "all steps of a claimed method" – here, the method specified in Claim 16 – are performed by the Richer Roulette. It is for a jury to decide whether limitations [c] and [d] of Claim 16 exist in the allegedly infringing device. Second, there is a factual dispute as to whether a "single entity" performed the method steps for the purposes of establishing direct infringement. Plaintiffs point to evidence of licensing agreements and game instructions that Defendant provided its customers to show that Defendant "establish[ed] 'the manner . . . of [] performance'" over the game. Defendant counters that the casino game operators and players act independently in performing critical steps. It is for a jury to weigh the evidence put forth by both parties on the question of Defendant's connection to its casino customers and players for the purposes of direct infringement. See Akamai Techs, 797 F.3d at 1023 (stating that "whether a single actor directed or controlled the acts of one or more third parties is a question of fact").

## 2.  Defendant's Motion for Summary Judgment

Defendant argues it is entitled to summary judgment on two grounds: (1) the '853 Patent is invalid under 35 U.S.C. § 102 because the asserted claims are anticipated or rendered obvious by prior art, and thus Defendant is entitled to a finding of non-infringement as a matter of law; and (2) the Richer Roulette does not infringe the asserted claims of the '853 Patent because it lacks at least one element recited in each asserted claim as a matter of law.

As a threshold matter, Defendant contends that the '853 Patent is invalid under 35 U.S.C. § 102 and § 103 because the existence of prior art anticipates or renders obvious the patent's asserted claims. Defendant identifies three pieces of prior art that it alleges either alone or in combination invalidate the asserted claims: the Wheel of Fortune Bonus Wheel, the Caro Patent, and the Pearce Patent. Defendant contends that the Bonus Wheel on its own anticipates Claim 1 and Claim 10 of the '853 Patent, that the Bonus Wheel in combination with the Caro Patent renders obvious Claim 16 of the '853 Patent, and that the Bonus Wheel in combination with the Caro and Pearce Patents renders obvious Claim 17 of the '853 Patent.

For the reasons stated above in the Court's analysis of Defendant's Objection to Judge Youchah's Order, Defendant may not assert invalidity theories or prior art references and combinations that were not timely disclosed pursuant to the Local Patent Rules. See O2 Micro, 467 F.3d at 1366 ("If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation."); Silver State Intellectual Techs, Inc. v. Garmin Int'l, Inc., 32 F. Supp. 3d 1155, 1164 (D. Nev. July 24, 2014) (granting Plaintiff's Motion to Strike Defendant's amended non-infringement contentions on the basis that references to prior art were not timely disclosed); Server Tech., Inc. v. Am. Power Conversion Corp., 2014 U.S. Dist. LEXIS 43484, *17 (D. Nev. Mar. 31, 2014) (excluding prior art references during trial because defendant failed to disclose those references in its invalidity contentions). Because Defendant failed to timely disclose the Bonus Wheel, the Court cannot consider whether the Bonus Wheel anticipates or renders obvious the '853 Patent.

The Court next evaluates whether the Caro and Pearce Patents – standing alone – invalidate the '853 Patent. Defendant does not allege that, in the absence of the Bonus Wheel, the asserted claims of the '853 Patent are rendered obvious or anticipated by the Caro Patent, Pearce Patent, or Caro Patent in combination with the Pearce Patent. As such, Plaintiffs have not squarely addressed whether a genuine dispute of material fact would exist as to the obviousness of the '853 Patent's asserted claims based on the Caro and Pearce Patents alone. Nevertheless, this Court finds that Defendant could not carry its burden of providing sufficient evidence "which would entitle it to a

directed verdict" if the proffered evidence of obviousness went uncontroverted at trial. C.A.R.

Transp. Brokerage Co., 213 F.3d at 480.

      In the absence of the Bonus Wheel's claimed elements, Defendant's invalidity charts are

left with only the following comparisons to support a claim of obviousness:

| '853 Patent – Claim 16 | Caro Patent |
|---|---|
| Providing a bet selection region; | Caro discloses placing a wager on a bet selection region. "FIG. 4 illustrates a preferred wager layout area. . . . The layout area [] is designed to receive wages [sic: wagers] for an inner plate while layout area [] is designed for receiving wages corresponding to indicia on the outer plate. In accordance with the advantages of the present invention, layout area [] is designed to receive wages wherein the person wagering hopes that the same number will come up on both the inner and outer plates." Caro at 3:52-62. |
| Making a forecast on the outcome of said game of chance by associating a marker on the bet selection region with at least one of many possible game outcomes; | Caro discloses placing a wager on a bet selection region. "FIG. 4 illustrates a preferred wager layout. . . . The layout area [] is designed to receive wages [sic: wagers] for an inner plate while layout area [] is designed for receiving wages corresponding to indicia on the outer plate. In accordance with the advantages of the present invention, layout area [] is designed to receive wages wherein the person wagering hopes that the same number will come up on both the inner and outer plates." Caro at 3:52-62. |

| '853 Patent – Claim 17 | Caro + Pearce Patent |
|---|---|
| The method for playing a game of chance according to claim 16 wherein said step of announcing a game decision including displaying an image of the one card removed from its tray on a video monitor; | Pearce discloses "a detection system for detecting a winning number in a roulette wheel game in which video images of at least one pocket and at least one corresponding colored pocket number region in a one-fifth region of the roulette wheel are obtained." Pearce at 1:53-57. Pearce also discloses a "winning number display system" that "performs the video processing" and outputs "winning number information … over an RS485 line to a controller [], which is |

| | provided with a key pad [] and is connected to a display [] which is provided in the vicinity of the roulette wheel for the display of the winning number, among other information." Pearce at 5:57-67. |
|---|---|

"A claimed invention is unpatentable due to obviousness if the differences between it and the prior art 'are such that the subject matter *as a whole* would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" Ruiz v. A.B. Chance Co., 234 F.3d 654, 662 (emphasis added) (quoting 35 U.S.C. § 103(a)). Importantly, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 418 (2007).

Here, the remaining alleged elements in the Caro and Pearce Patents plainly do not render the '863 Patent invalid for obviousness, as they do not make it such that the '853 Patent "as a whole" would have been obvious. They cover only very few of the limitations asserted in claims 16 and 17, and they arguably do not address the most critical limitation – that of the "radially outermost stop." As noted above and in the Court's Claim Construction Order, the '853 Patent was allowed "based upon the novelty of the 'radially outermost stop'" – a limitation not alleged to be disclosed by the Caro or Pearce Patents at all. The Court thus rejects Defendant's contention that the '853 Patent is invalid for obviousness.

Defendant also argues it is entitled to summary judgment because the Richer Roulette does not possess every limitation in each asserted claim, either literally or under the doctrine of equivalents. Defendant's arguments here are identical to those raised in its Response to Plaintiffs' Motion for Summary Judgment. Defendant contends that several limitations within claims 1 and 16 are not met, because (1) the Richer Roulette lacks a stationary base; (2) the Richer Roulette lacks trays and radially outermost stops; (3) the Richer Roulette lacks cards; and (4) the Richer Roulette does not progressively slow a free rotating turntable to rest. Defendant adds that Claim 16 is a method claim involving the actions of third-party individuals unaffiliated with Defendant – thus Defendant cannot be liable for infringement under that claim. Further, because claims 10 and 17 are dependent claims based upon independent claims 1 and 16, respectively, and "it is

axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed," Defendant adds that it cannot be found to infringe claims 10 and 17.

For the reasons stated above in the Court's analysis of Plaintiffs' Motion for Summary Judgment, the Court finds there to be no dispute that the Richer Roulette includes a stationary base, and that the Richer Roulette's turntable progressively slows until it comes to a complete rest. The Court does find that there is a genuine dispute of material fact as to whether the Richer Roulette lacks trays with radially outermost stops, and whether the Richer Roulette involves cards. On the question of divided infringement, the Court again observes that whether Defendant directed or controlled the acts of the third-party casino operators and guests in carrying out the method steps is a question of fact for the jury. As such, the Court rejects Defendant's claim that the Richer Roulette does not infringe the '853 Patent as a matter of law, and denies Defendant's Motion for Summary Judgment.

## VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Order Granting Plaintiffs' Motion to Strike Defendant's Expert Report and Denying Defendant's Motion to Amend, (ECF No. 127), is **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 95), and Defendant's Motion for Summary Judgment, (ECF No. 116), are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that a status conference is set in this case for November 5, 2021 at 10:00 AM by videoconference.  The instruction regarding videoconference appearance to be issued.

DATED: September 30, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**